## Layne v. Norman.

(Decided May 25, 1920.)

## Appeal from Pike Circuit Court.

1.  Adverse Possession—Occupation by Permission—Notice of Hostile Claim.—One entering possession of property by consent of the owner cannot claim title by adverse possession unless the intention to claim it adversely is actually brought home to the owner by such acts or conduct as would put a reasonable person on notice that a hostile claim was being asserted.

2.  Adverse Possession—Parol Gift—Nature of Holding.—If one enters and takes possession of land under an unconditional parol gift, his holding is adverse from that time, and if continued for fifteen years, will vest the donee with title.

3.  Adverse Possession—Parol Gift.—When Joint Occupancy of Donor and Donee Does Not Suspend the Running of the Statute.—The fact that the donor occupies land jointly with the donee will not suspend the running of the statute of limitations, where the donor does not accompany his presence by any claim or act of ownership, but disclaims ownership and admits it to be in the donee.

4.  Gifts—Evidence.—In an action involving the right to realty which plaintiff claimed by adverse possession under a parol gift from his uncle, evidence examined and held insufficient to show an unqualified gift of property.

WILLIS STATON and CHILDRESS & CHILDRESS for appellant.

ROSCOE VANOVER and E. J. PICKELSEIMER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

John N. Layne, a bachelor, was the owner of a tract of land in Pike county. On May 1, 1917, he conveyed the land to his nephew, Moses Norman, in consideration of the latter's agreement to take care of him and permit him to occupy the land as long as he lived. Claiming that he had acquired the land by adverse possession under a parol gift from his uncle, John Layne, and that the deed from John Layne to Moses Norman was champertous, Brack Layne brought this suit against Moses Norman to recover the land. From a judgment denying him the relief prayed for, Brack Layne appeals.

According to plaintiff's evidence, he went on the land more than fifteen years before the suit was brought, and thereafter occupied and cultivated it, paid the taxes on it

and claimed it as his own. On the question of parol gift he testified as follows: "I once lived with John Layne about a year. About that time I was talking with John Layne about some timber that my grandfather had contracted off the same land to Jim Pinson, and I said to him at the same time, 'Then, if you don't want it, why don't you give it to me,' and he says, 'Well, haven't you got it,' and I replied in words like this, 'I might have it, but the object is whether I could hold it or not.' I didn't believe at that time, that he would ever take it away from me, and for another reason I claimed it, that he said he didn't have no use for it, and that it would make me equal with the other heirs." On being asked if at the time his uncle gave him the land, his uncle wanted witness to take care of him, he replied, "Well, when this talk was cancelled, I was living with him, I asked him why he didn't give it to me and he said, 'Hain't you got it?' He never said he wanted me to take care of him." It further appears that when plaintiff's grandfather died, plaintiff's father received his share of his grandfather's estate, and that John Layne also occupied the land while plaintiff claims he was in adverse possession of it. On the other hand, John Layne testified that he never gave the land to plaintiff, but merely permitted him to occupy it. While plaintiff paid the tax receipts, he did so out of the proceeds of the farm, and the receipts were always made out in the name of John Layne. Upon one occasion, when a neighbor had built a fence on the land, plaintiff got his uncle to sign a notice notifying the neighbor to remove the fence. In speaking of the land to several witnesses he referred to it as "Uncle John Layne's land." On another occasion he borrowed some money from a party to buy some timber trees from his uncle John. He said to other parties that if they wanted to buy coal off the land they would have to see his uncle John.

The rules applicable to a case of this kind are as follows: One entering possession of property by consent of the owner cannot claim title by adverse possession, unless the intention to claim it adversely is actually brought home to the owner by such acts or conduct as would put a reasonable person on notice that a hostile claim was being asserted. On the other hand, if one enters upon land and takes possession under an unconditional parol gift, his holding is adverse from that time,

and if continued for fifteen years, will vest him with title. Tippenhauer v. Tippenhauer, 158 Ky. 639, 166 S. W. 225. Nor will the fact that the donor occupies the premises jointly with the donee suspend the running of the statute, where the donor does not accompany his presence by any claim or act of ownership, but disclaims ownership and admits it to be in the donee. Owsley v. Owsley, 117 Ky. 47, 77 S. W. 397.

It will be observed that plaintiff testified that when he asked his uncle why he did not give him the land, his uncle said, "Well, haven't you got it?" and then plaintiff replied, "I might have it, but the object is whether I could hold it or not." What his uncle said in reply does not appear. Even though there were no evidence to the contrary, it may be doubted if this evidence is sufficient to show an unconditional parol gift  Certainly, it is not sufficient when viewed in the light of the uncle's denial of the gift, and of the numerous circumstances tending to show that plaintiff, during his entire occupancy, continued to recognize the ownership of his uncle. The evidence being insufficient to show a parol gift of the land, it is clear that plaintiff's joint possession with his uncle was never adverse to the latter, and that the deed of May 1, 1917, was not champertous.

Judgment affirmed.