## Cox, et al. v. Colossal Cavern Company.

(Decided October 16, 1925.)

## Appeal from Edmonson Circuit Court.

1. Deeds—"Reservation" and "Exception" Distinguishhed.—A reservation is creation in grantor's behalf of some new right in thing granted, that is, an easement, while exception is exclusion of something from effect or operation of deed or contract, which would otherwise be included; reservation being a bare right, an invisible thing, an incorporeal hereditament, while an exception is an estate, a part of realty itself, a visible tangible thing, a corporeal hereditament.

2. Deeds—Clause Reserving Caves for Benefit of Grantor Held "Exception," Not Reservation.—Clause in deed, reserving and retaining from sale all caves and rights of way therefor, etc., for benefit of grantor, held an exception, not a reservation.

3. Deeds—Intent Gathered from Language, Read in Light of Attending Circumstances and Parties' Relation, Controls Technical Terms.—In interpreting deed, intent gathered from language or words of writing, read in light of attending circumstances and relation of parties, will control technical terms, when apparent and not repugnant to any rule of law.

4. Deeds—Caves, with Rights of Way, Exploration and Exhibition, Held Excepted from Operation of Deed.—Deed held to except from operation thereof for benefit of grantor, all caves on or beneath surface of tract conveyed, with rights of way therefor and privilege of exploring surface for openings or avenues, extending or enlarging them, and exhibiting caves to public according to prevailing usages and customs; such rights being simply protective of ownership of caves themselves.

5. Deeds—Grantee of Caves Excepted from Operation of Deed to Others Held to Own so Much of Material About Cavity as Necessary to Preserve and Maintain Caves.—Grantee of caves, with rights of way, exploration, etc., excepted from operation of prior deed to others from former owner of land, held to own so much of material about, above, and below, cavity as is necessary to preserve and maintain caves, with right to explore, improve, exhibit, and enjoy them without disturbing surface or any other part of land more than is reasonably necessary in exercising such rights; ownership of caves being severed from that of surface.

6. Deeds—Rights and Duties of Owner of Caves Excepted from Operation of Deed Stated.—Owner of caves, excepted from deed of land, has right to exclusive possession of caves, to maintain ground beneath and vault above, and remove boulders, etc., so as not to impede or obstruct travel through them, and to preserve natural formations, but cannot remove such formations in such quantities or manner as to destroy support of surface owner's property.

7. Adverse Possession—Possession of Surface Does Not Give Possession of Caves Excepted from Operation of Deed by Surface Holder's Predecessor.—Under Ky. Stats., section 2366a, which merely declares common law, possession of surface does not give possession of caves excepted from operation of deed by surface holder's predecessor in title, presumption being that surface holder is only a trustee in possession for benefit of owner of caves.

8. Vendor and Purchaser—Grantees of Surface and their Heirs, but Not Grantee of Caves Conveyed by Grantor's Heirs, Presumed to Know of Exception of Caves from Grantor's Deed.—Grantee, his vendees, and latter's heirs at law, are presumed to have knowledge of deeds of record in their chain of title, and hence of exception of caves from operation of deed to grantee, though not mentioned in latter's deed to his vendees; but grantee of caves conveyed by grantor's heirs cannot be presumed to know contents or nature of deeds in such surface owner's chain of title.

9. Champerty and Maintenance—Conveyance of Caves by Heirs of Grantor, Excepting them from Operation of Deed, Held Not Champertous, Though Heirs of Grantee's Vendee Claimed them by Adverse Possession.—Conveyance of caves and rights therein by heirs of grantor, excepting caves and rights of way and exploration from operation of deed, held not champertous, though heirs of surface grantee's vendees claimed caves by adverse possession, their possession of surface being deemed possession of caves for benefit of owner thereof.

10. Adverse Possession—Cave Not Mere Easement, Nor Artificial or Nonexistent Before Discovery, so as to Become Property of Surface Holder by Adverse Possession.—Cave is not a mere easement, nor artificial or without actual existence before discovery, so as to become property of surface holders by adverse possession.

11. Abandonment—Equity—Doctrines of Laches and Abandonment Inapplicable to Estate in Land Including Caves.—Equitable doctrines of laches and abandonment only apply to easements or licenses, not to actual estates in land, including caves beneath surfaces, which can only be lost or barred by operation of statutes of limitation.

THOMAS, THOMAS & LOGAN and B. M. VINCENT for appellants.

RODES & HARLIN and WOODWARD, WARFIELD & DAWSON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

This suit was begun by the appellants, W. Perry Cox and his wife, Luck Edwards Cox, who will hereafter be referred to as the plaintiffs, and they allege that W. Perry Cox is the owner of a tract of land in Edmonson

county, Kentucky; that the appellee, Colossal Cavern Company, whom we will hereafter refer to as the defendant, is claiming to own all the caves and rights of way for caves that may be upon or under said tract of land; that it has the power and privilege of exploring, opening, visiting and exhibiting said cave or caves to visitors, and the right to take from said land formations found in the caves thereunder, thereby casting a cloud upon plaintiff's title, which plaintiffs pray should be removed, and that their title be quieted.

The trial court adjudged that the defendant was the owner of the caves and caverns under the land, and entitled to reasonable ingress and egress upon the surface to reach any opening upon the land to the caves beneath; and was further entitled to the exclusive possession of such caves and the right to exhibit them to visitors, and to the formations or souvenirs found therein. The court further adjudged that defendant was entitled to a reasonable use of the surface of the land for the purpose of exploring the same for cave openings and of exhibiting such caves to the traveling public.

On September 17, 1883, Mary E. Proctor and her husband conveyed to James H. Adair certain property which is now owned by the plaintiffs. In September, 1891, Adair and wife sold and conveyed this property to Sara A. Smith and George R. Smith, and in February, 1894, Smith and wife conveyed this property to Amelia S. Cox and Joseph Cox. After the death of these, intestate, this property passed to the plaintiff, W. Perry Cox, who is their only child and heir at law. In the deed from the Proctors to Adair there appears this clause:

"But it is full understood that the said Mary E. Proctor hereby reserves and retains from the sale and all caves and right of way for caves that may be upon or under said tract of land, with the full power and privilege of exploring, opening and visiting said caves to visitors, and should any cave or caves be discovered in or under said land the same is specially reserved from this sale for the benefit of the grantor, Mary E. Proctor."

No such clause was inserted in the deed from Adair to the Smiths, or from the Smiths to the father and mother of the plaintiff.

On July 19, 1901, the heirs of Mary E. Proctor conveyed to the defendant, Colossal Cavern Company, the

caves and cave rights under and upon several tracts of land, one of these tracts being the tract now owned by the plaintiff. The first question presented by this record is, just what was the provision contained in the deed from the Proctors to Adair? Was it a reservation, exception, condition, covenant, restriction or limitation?

Considering first whether this is a reservation or an exception, we find a reservation to be: "The creation in behalf of a grantor of some new right in the thing granted, e. g., an easement." An exception is: "The exclusion of something from the effect or operation of a deed or contract, which would otherwise be included, e. g., a grantor may convey his farm, excepting and excluding the coal beneath it." A reservation is a bare right, an invisible thing, an incorporeal hereditament, while an exception is an estate, a part of the realty itself, a visible tangible thing, a corporeal hereditament. Unquestionably the clause in question is an exception. See Allen v. Henson, 186 Ky. 201, 217 S. W. 122; Hicks v. Phillips, 146 Ky. 305, 142 S. W. 395, 47 L. R. A. (N. S.) 878; Standard Elkhorn Coal Co. v. Bolen, 193 Ky. 342, 236 S. W. 242.

Having determined what it is, there is no need to discuss what it is not, and this brings us to the construction of the clause in question, and a determination of its meaning. This court has laid down in many cases those rules which should govern in the interpretation of deeds. In the case of American National Bank v. Madison, 144 Ky. 151, 137 S. W. 1077, 38 L. R. A. (N. S.) 597, this court said:

"The intention is gathered from the language or words of the writing, and this language should always be read in the light of attending circumstances and the relation of the parties to the contract. . . .

"The intent, when apparent and not repugnant to any rule of law, will control technical terms; for the intent and not the words is the essence of every agreement."

See Baustic v. Phillips, 134 Ky. 711, 121 S. W. 629; Hunt v. Hunt, 154 Ky. 679, 159 S. W. 528; Ramey v. Ramey, 195 Ky. 673, 243 S. W. 934.

What was intended to be written clearly was:

"But it is fully understood that the said Mary E. Proctor hereby reserves and retains from the sale

any and all caves and right of way for caves that may be upon or under said tract of land, with full power and privilege of exploring, opening and visiting and exhibiting said caves to visitors, and should any cave or caves be discovered in or under said land, the same is specially reserved from this sale for the benefit of the grantor, Mary E. Proctor."

Thus the defendant as the mesne grantee of Mrs. Proctor now owns the following rights in, on and under the land of the plaintiff:

1.  All caves on or beneath the surface.
2.  Rights of way "for" caves that may be upon or under said tract of land.
3.  The privilege of exploring the surface to find openings or avenues, and, when found, of extending or enlarging these openings to make the avenues beneath the surface accessible.
4.  The right of exhibiting all such caves to the traveling public in the manner and according to the prevailing usages and customs at the time.

These rights of way upon the surface for purpose of exploration and to afford access if openings should be found upon the surface leading to the underground avenues, were incidental to the ownership of the caves, which form a part of the land itself. Such rights of way and exploration were regarded at that time, and now, as simply protective of the ownership of the caves themselves. It might be that these underground avenues could be reached from an opening a mile distant. Yet it might be otherwise, and necessary to effect an opening on the land itself which should lead not only to the subterranean avenues immediately underneath this particular 60-acre tract, but connect up with other avenues leading to distant domes and chambers. It might be that the avenues immediately underneath this particular tract form the connecting link between long avenues upon one side and long avenues upon the other side. Whatever might be the future possibilities, it was simply protective of the cave interests in the land to provide for these surface rights of ingress and egress, exploration and use of openings.

We must next determine just what a cave is. Webster defines a cave as a hollow place in the earth, a subterraneous cavity. Certainly defendant owns something more than the mere cavity. It owns so much of the ma-

terial above, about and below the cavity as is necessary to preserve and maintain the cave. There is a difference between this and the ownership of a seam of coal beneath the surface owned by another. In the latter case the owner of the surface may remove that without affecting the ownership of the coal, but if plaintiff should remove the surface of this farm, he would destroy utterly the defendant's caves. Each of them has rights in this property, but neither has any right to damage unnecessarily the estate of the other. The plaintiff is entitled to all of the surface except such part as the defendant may reasonably need for exploring or visiting its caves. Defendant owns the caves and may explore, improve, exhibit and enjoy them, but in so doing may in no wise disturb the surface or any other part of the land, except to the extent that it is reasonably necessary for it so to do in exercising its right of way and in making such reasonable explorations. We have here a severance of the caves from the surface into two distinct ownerships.

When Mrs. Proctor put this exception in her deed to Adair this severance resulted. Measured by the situation of the parties and construed by the customs and usages then and since prevailing in the Mammoth Cave region, such a severance is necessary to effectuate the intention of the parties. It may be unusual, but it will not deprive the plaintiff of any of the rights given him under the conveyance in question. If the caves lie wholly beneath the surface and are entered from distant openings, then the plaintiff's enjoyment of the surface is in no way interfered with, and, indeed, his taking any minerals that might lie beneath the surface is in no way prejudiced, provided in his mining operations he does not interfere with the rights of the defendant in the cave itself. Nor will the plaintiff be seriously disturbed in his enjoyment of the surface by a reasonable right of way to and from any cave opening that might be found upon the surface. In the case of Ball v. Clark, 150 Ky. 383, 150 S. W. 359, this court said:

   "  .  .  .  the owner of the land may convey the surface to one and reserve to himself an estate in fee in the minerals, or *vice versa,* or may convey the surface to one and the minerals to another; that the effect of such a conveyance will be to create an estate separate and distinct in the sundered properties, the one from the other, entire and complete in fee simple."

In the case of Kincaid v. McGowan, 88 Ky. 91, 4 S.
W. 802, 9 R. 987, 13 L. R. A. 289, this court said:

> "Minerals in place are land. They are subject
> to conveyance. The surface right may be in one man
> and the mineral right in another. Both in such a
> case are landowners. They own separate and dis-
> tinct corporeal hereditaments. . . .
>
> "By this severance each estate is subject to the
> laws of descent, of devise, or conveyance. . . .
>
> "Also, by the severance each estate is as dis-
> tinct property in the respective owners as is the
> property in a two-story house, where the title to the
> lower story is in one person and the title to the upper
> story is in another person. An action of ejectment
> will lie in behalf of the owner of the surface to re-
> cover it; also an action will lie in behalf of the owner
> of the mineral estate to recover it."

Again, in the case of Baustic v. Phillips, *supra*, this
court said:

> "Where the vendor of land reserves the trees
> growing thereon, or any portion thereof, they re-
> main his property, and as against the purchaser of
> the land he has a right to enter on the land, and with-
> out doing any unnecessary damage cut and remove
> the timber, or he may sell such right or give license
> to another to exercise it.
>
> "Standing timber is realty unless bought with
> the intention of immediate severance from the soil."

So we think that if the ownership of these caves had
simply been excepted from the conveyance, and nothing
said about a right of way upon the surface to enter any
opening that might be found thereon, such a right of
ingress and egress would result by necessary implication.
In the cited case this court said that the owner of
the standing timber had the right to enter on the land
and cut and remove it without doing any unnecessary
damage. In the decisions of this court, therefore, are
found three illustrations of a severance of the title in fee,
to-wit, in the case of minerals, in the case of standing tim-
ber not to be immediately severed, and in the case of a
house with more than one story, where there are differ-
ent proprietors of different apartments. In each instance
such proprietors are said to be landowners.

Now what is the measure and extent of this cave ownership? Certainly the owner has the right to the exclusive possession, for such caves would be useless and valueless unless the proprietor has the right to exclude everyone except those who are willing to pay the entrance fee to see the natural wonders beneath the earth's surface. This right of exclusive possession applies to the owner of the surface as well as any one else. The cave owner certainly has the right to maintain the ground beneath his feet and the curving vault above his head, for otherwise travel through these underground avenues would be impeded, if not entirely obstructed. He certainly possesses the right to remove boulders and other obstructions in the route of travel so as to make such travel more convenient and pleasant to those visitors who have paid their entrance fees. He certainly has the right to preserve the natural formations of stalactite and stalagmite and other beautiful creations of carbonate of lime found in these subterranean avenues; for in such formations are found some of the most admired and beautiful wonders of the cave region. These formations, as is well known, assume at times wierd and fantastic forms, to which the guides give many and varied names. All this adds to the wonder and the interest of the property retained by the grantor who has reserved them, or of the defendant who has purchased them. All this, too, is in line with the usages and the practices of the Mammoth Cave region as they have prevailed for the past century. Furthermore, for this same number of years, it has been the practice and custom to take the loose pieces of stalactite and stalagmite, fallen of themselves or broken off by the guides, and to fashion from them souvenirs and mementos very much desired by the traveling public and bought extensively at the mouth of the cave or in the corridors of the hotels. Such formations are utterly without value except as mementos, and have been for three-quarters of a century a natural appurtenance of cave ownership.

Defendant has no right, however, to remove these formations in such quantities or in such way as to destroy the support of the plaintiff's property. Defendant's ownershrip is thus more than a mere easement, and the case of Higdon v. Nichols, 204 Ky. 56, 263 S. W. 665, does not apply.

Plaintiff claims the caves under his land by adverse possession. Farnsworth v. Barret, 146 Ky. 556, 142 S.

W. 1050, is authority to the contrary. In that case this court discussed section 2366a, Kentucky Statutes, providing that the possession of the surface by the original grantor, or those asserting title under him, shall be deemed to be the possession of the minerals beneath for the benefit of the person or his heirs and assigns to whom such minerals shall pass, and says:

"And since the statute is merely declaratory of the common law as announced in most of the states, which holds that possession of the surface does not give possession of the mining rights which had been sold, but, on the contrary, presumes that the holder of the surface was only a trustee, and held possession for the benefit of the owner of the mineral, the same principle controlled prior to the passage of the act of 1906."

In the case of Stearns Coal & Lumber Co. v. Boyatt, 168 Ky. 111, 181 S. W. 962, this court said:

"An element of possession, which is necessary to cause it to ripen into a title, is that it must be visible and notorious. The true owner must have knowledge of the hostile claim, or the possession must be visible and notorious so as to raise the presumption of notice to every one that the right of the owner is invaded intentionally, with a purpose to assert a title adverse to his.

"And for one to simply make claim by his thought to a body of land, which has no other boundary than natural water courses, natural stones, bluffs, cliffs, gaps in cliffs, and mountains, as is undertaken to be done for Andrew Boyatt, would not give notice to the owner, nor any one else, of the claimant's intentions."

Going back to some of the earlier cases, we find in Thurston v. Masterson, 9 Dana 228, the following:

"There must be some distinct and notorious act of assertion of right under it."

In the case of Buford v. Cox, 5 J. J. Marshall 589, this court, speaking of adverse possession, said:

"It must be made in such a manner as will afford the means to those interested to ascertain the fact, by ordinary diligence; because otherwise the oppo-

site claimant  . . .  cannot know that it is necessary to sue."

In the case of Bailey's Widow and Heirs v. See, et al., 187 Ky. 596, 219 S. W. 1061, this court held that if the possession in its origin is amicable it never becomes adverse unless the property is in fact held adversely and in such a manner as to apprise a person of ordinary prudence that the holding is adverse. Again, in Nelson v. Johnson, 189 Ky. 815, 226 S. W. 94, this court held that the bare actual possession alone of a tract of land is no evidence of an adverse holding, since one in possession is always presumed to be holding in subservience to the legal title.

See also Childers v. Kennedy, 189 Ky. 179, 224 S. W. 651; Layne v. Norman, 188 Ky. 317, 221 S. W. 869; Riley v. City of Lexington, 188 Ky. 88, 221 S. W. 228; Scott v. Laws, 185 Ky. 440, 215 S. W. 81, 13 A. L. R. 369; Hoskins v. Northern Lee Oil & Gas Co., 194 Ky. 628, 240 S. W. 377.

The Scott case holds that the owner of minerals beneath the surface cannot lose his rights by any length of nonuser. The Hoskins case holds that limitation does not run against the holder of the mineral estate unless the holder of the surface opens mines or wells and operates them.

Counsel for plaintiff place some stress upon the fact that J. H. Adair subsequently conveyed the land from which the caves or cavern rights had been excepted, to the vendor of plaintiff without taking any notice of such exception. No such exception was mentioned in the deed to Joseph Cox. However, it may be said that Adair, his vendees, Joseph and Amelia Cox, and their heirs at law, are all presumed to have knowledge of the deeds of record constituting their chain of title. In this chain of title was the deed of the Proctors to J. H. Adair, which contained the exception in question, of the caves and caverns beneath the surface.

But the Colossal Cavern Company cannot be presumed to know the contents or nature of the deeds from Adair or Smith, or any subsequent conveyance of any subsequent vendee, since none of such deeds constitute any part of the chain of title of the Proctor heirs or their assignee, the Colossal Cavern Company. Eversole v. Virginia Iron, Coal & Coke Co., 122 Ky. 649, 92 S. W. 593, 29 R. 151.

These remarks dispose of the question of champerty raised by counsel for plaintiff. Counsel for plaintiff

state in their discussion of the question of adverse possession that ''a cave is a subterranean easement, and in a large measure artificial.'' We have already disposed of the question as to whether a cave is merely an easement or an estate in the land itself. But to say that a cave which has taken thousands of years for the forces of nature to bring into existence is artificial, involves a stretch of a very active imagination. He goes even further in one portion of his brief and refers to the caves beneath the surface of this land as undefined, and, indeed, having no actual existence before discovery. He might as well say that minerals have no actual existence, and are artificial and undefined until the oil well has been drilled or the coal shaft sunk. Counsel for plaintiff endeavor to apply the equitable doctrine of laches or abandonment. Such doctrines could only apply to easements or licenses, and have no application to actual estates in the land itself, which can only be lost or barred by the operation of the statutes of limitation.

The judgment is affirmed.

The whole court sitting.