Malvray JOHNSON et al., Appellants,

v.

PITTSBURGH CONSOLIDATION COAL
COMPANY, Appellee.

Court of Appeals of Kentucky.

March 21, 1958.

O. T. Hinton, Blaine H. Rutherford, L. D. May, Pikeville, for appellants.

Francis L. Rice, Pikeville, E. C. O'Rear, Allen Prewitt, Frankfort, W. G. Stathers, Clarksburg, W. Va., for appellee.

CAMMACK, Judge.

We are construing for the first time on appeal a writing which was used in 1890 by a Pennsylvanian, Richard M. Broas, to secure mineral rights to some 16,000 acres of land on Shelby Creek, in Pike County. The appellee, Pittsburgh Consolidation Coal Company, is now the owner of all rights granted to Broas and the appellants are some of the heirs or assigns of one of Broas' grantors. This appeal is from a judgment which held that the Broas writing conveyed a defeasible fee to the coal in the lands in question, and quieted title to other property rights and privileges claimed by the appellee.

The appellants contend that reversal should be granted because (1) when the ambiguous writing is construed most strongly against the party who wrote or prepared it, it is seen to be a lease and not a deed; (2) the parties interpreted the writing as a lease; (3) when construed as a deed the writing defers the right of alienation for 999 years, thus violating the rule against

perpetuities; and (4) for 66 years the lessee has failed to operate under the rights granted and thus has abandoned and forfeited those rights.

The Broas writing has been construed in the U. S. District Court, Eastern District of Kentucky, (unreported cases). It has been considered as a deed in restraining actions brought in the Pike Circuit Court; one of them having been heard before Judge E. C. O'Rear, then a Judge of this Court. The Federal Court, without stating its analysis of the language, construed the writing as granting a defeasible fee to the coal.

The language of the Broas writing, called an Indenture, follows:

"Witnesseth, That the said parties of the first part, in consideration of one hundred and twelve 30/100 ($112.30) dollars in hand paid, as a bonus, the receipt of which is hereby acknowledged, do hereby lease, grant, convey and confirm unto said Richard M. Broas his heirs or assigns, for the term and period of nine hundred and ninety nine years from and next after the date hereof, all the coal, on or under the following tract of land, on the waters of Owl Branch of Shelby Creek, in Pike County, Kentucky, comprising 112.3 acres, more or less, and described as follows, viz.: (description omitted) * * * The conditions of this lease are as follows: At any time during its term said Broas, his heirs or assigns, shall have access to coal, with right to mine, use or remove same; use of surface when necessary for mining purposes or utilizing products of mine, right of way for roads or railroads; use of water, stone, necessary for mining or coking operations, it being expressly understood and agreed that this lease confers no ownership to the fee of premises leased, and that parties of first part retains title to the surface; with full right

to dispose of standing timber at discretion; and the privilege to mine and use coal for their own domestic purposes. As rental and for use and enjoyment of lease, and the rights of same herein granted and conveyed, the said Broas, his heirs or assigns, shall pay to parties of first part, heirs or assigns, the sums of two dollars per acre, such rent to become due and be payable on each acre when and as the same is mined, and the said parties of first part covenants to and with party of second part, his heirs or assigns, that he or they shall and may peaceably and quietly have hold and enjoy all rights and privileges hereby granted, for and during the term aforesaid, without interruption or molestation of said parties of first part, or any person whomsoever; and hereby do warrant, generally and will defend the term and all rights and privileges granted by this lease to said Richard M. Broas, his heirs or assigns."

The appellants argue that the language of the writing expressed an intention of the parties that it was a lease and not a deed or conveyance. They argue that any ambiguity or doubt should be resolved against Broas and his assigns. In concluding that the writing was a deed, the trial court said, " * * * the draftsman of this instrument very carefully duplicated and balanced—everywhere that he used the words that meant a lease he used the words that meant a deed, and vice versa. The instrument can be analyzed in those terms."

We believe the trial court determined the proper character of the Broas writing. For example, the word "lease" in the phrase "do hereby lease, grant, convey and confirm unto said Richard M. Broas his heirs and assigns," loses its specific meaning because of the words of enlargement or extension which follow it. We think the wording constituted a conveyance

of the fee in the coal. When the entire instrument is considered we believe there is shown a manifest intention of the parties to give Broas the fee in the coal for a consideration of $1 per acre; and also to lease to him, at a rental of $2 per acre, the premises under which the coal lies. The rental is to be paid whenever, within 999 years, use of the premises becomes necessary for removal of the coal. This interpretation of the instrument is supported by evidence which established $1 per acre as a reasonable consideration for the fee to coal in the area at the time the Broas writing was executed (1890).

Instruments of this type are generally interpreted as an absolute conveyance of the specified mineral; Plummer v. Hillside Coal & Iron Co., 160 Pa. 483, 28 A. 853. This is true even though the fee conveyed may revert after a term of years. Barringer and Adams, The Law of Mines and Mining, pp. 36, 37. See also Kennedy v. Hicks, 180 Ky. 562, 203 S.W. 318. The statement in Terrill v. Kentucky Block Cannel Coal Co., 290 Ky. 35, 160 S.W.2d 326, to the effect that a former instrument was called a lease and "correctly so," was made gratuitously by the present writer because the former instrument was not in issue.

■ The appellants point out that 16,500 acres of coal lands were covered by the Broas writings and that those claiming under Broas have secured additional agreements in connection with their rights in all but some 1,500 acres. They argue that these additional agreements would not have been obtained if the appellee and its predecessors believed they already owned the fee to the coal. The appellee says that the new agreements were executed to secure additional rights over and above those granted in the Broas writing; and also to obtain a record of payment of the $2 per acre rental proviso. It insists that the efforts to eliminate the necessity of paying surface rental when it removes the coal, or to secure additional rights, should not place doubt upon its interpretation of the Broas writing as a deed. The appellee's argument is supported by the fact that it had obtained the favorable decision of a Federal Court prior to making some of the new agreements. The appellee has listed the coal for taxation in Pike County and paid the taxes thereon each and every year since the acquisition of its rights. We are not disposed to say that the obtention of the additional agreements manifested conduct inconsistent with the appellee's present position.

■ The rule against perpetuities does not apply to vested estates. KRS 381.220, Cammack v. Allen, 199 Ky. 268, 250 S.W. 963; Sorrell v. Tennessee Gas Transmission Co., Ky., — S.W.2d —. Regardless of whether the Broas writing be construed as a deed conveying a fee defeasible after 999 years or as a lease for 999 years, the estate held by the appellee is vested. The only possibility involved concerns who gets the coal after 999 years. Whether or not the rule against perpetuities would apply as regards that interest depends upon its classification. If classed so that the rule against perpetuities applied, the future interest only would fail and the fee would be made indefeasible. McGaughey v. Spencer County Board of Education, 285 Ky. 769, 149 S.W.2d 519, 133 A.L.R. 1474. In the event the coal remains unmined 999 years after the date of the instrument, future generations may be called upon to deal with the problem.

■ The appellants' final argument is that, since 66 years have passed since the Broas writing was executed with no coal having been mined or rentals paid, the appellee has abandoned and forfeited all rights originally granted. The validity of this argument was dependent upon a determination that the Broas writing was a lease and not a deed. Since we have determined that the writing was in fact a deed to the coal, no question of abandonment arises.

Judgment affirmed.